In the Matter of the Application of THE TROY PRESS COM-
    PANY, Respondent; for a Writ of Mandamus against ELIAS
    P. MANN, as County Treasurer of Rensselaer County,
    Appellant.

TAX — PUBLICATION OF NOTICES OF TAX SALES AND NOTICES OF
REDEMPTION THEREOF IN CITY OF TROY AND COUNTY OF RENSSELAER —
LOCAL STATUTES REGULATING PUBLICATION REPEALED BY IMPLICATION
BY ACT FOR GOVERNMENT OF CITIES OF SECOND CLASS AND GENERAL
TAX LAW.   By the provisions of the act for the government of cities of
the second class (L. 1898, ch. 182, as amd. by L. 1899, ch. 581) pertaining
to the sale of lands for unpaid taxes and the redemption thereof within
cities of the second class, and by the provisions of the Tax Law (L. 1896,
ch. 908) pertaining to the sale and redemption of lands in a county, outside
of any cities situated therein, there is provided a complete and harmonious
system and method of procedure, which supersedes and by implication
repeals the special statutes (L. 1860, ch. 236; L. 1885, ch. 461, as amd. by
L. 1892, ch. 512) requiring the publication of notices of tax sales, and
notices of redemption from tax sales, of lands within the city of Troy, a

city of the second class, and lands within the county of Rensselaer, to be published in newspapers, published in the city of Troy and in other places in the county of Rensselaer, annually designated by the board of supervisors at the fall session thereof; so that such notices relating to lands within the city of Troy must now be published, under the provisions of the act for the government of cities of the second class (L. 1898, ch. 182, as amd. by L. 1899, ch. 581, §§ 29 and 313), in newspapers published in said city and designated as the official newspapers thereof by the common council, at its first meeting after the election of its members; and such notices relating to lands in the county of Rensselaer, outside the city of Troy, must be published, under the provisions of the Tax Law (L. 1896, ch. 908, §§ 151, 130), in the newspapers designated for the publication of the Session Laws.

*Matter of Troy Press Co.*, 115 App. Div. 25, affirmed.

(Argued January 8, 1907; decided January 29, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 29, 1906, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the appellant herein to deliver to the petitioner orders for the publication of certain notices of sale of land for non-payment of taxes and notices of redemption of lands previously sold.

It was claimed by the petitioner that it was entitled to publish the notices by reason of the facts, *first*, that it was an official newspaper of the city of Troy, designated as such by the common council under section 29 of the Second Class Cities Law, and that under section 313 of that law these notices, in so far as they affect lands in said city, should be published in such official newspapers; and, *second*, that from 1903 to 1906, both inclusive, it was designated by the majority of the Democratic members of the board of supervisors of Rensselaer county, under the provisions of section 19 of the County Law, as the newspaper representing their political party, to publish the Session Laws and concurrent resolutions of the legislature; and, therefore, under the Tax Law of 1906 these notices, so far as they affect lands without the cities, should be published in that paper. Further facts appear in the opinion.

*Lewis E. Griffith* for appellant.  The Troy Daily *Press* not having been designated as county newspaper pursuant to chapter 512 of the Laws of 1892 is not authorized in law to print notices of tax sales and notices of redemption therefrom. (*F. A. Bank* v. *Colgate,* 120 N. Y. 381; Sedg. on Stat. Law [2d ed.], 325.)  The provisions of the Tax Law and the amendment to the charter for cities of the second class did not directly or impliedly repeal the special laws relating to the collection of taxes and designation of official newspapers in Rensselaer county.  (*F. A. Bank* v. *Colgate,* 120 N. Y. 381; *Matter of Huntington,* 168 N. Y. 399; *People ex rel. Burroughs* v. *Brinkerhoff,* 68 N. Y. 259; *People* v. *Quigg,* 59 N. Y. 83; *People ex rel. Kingsland* v. *Palmer,* 52 N. Y. 88; *People ex rel. Strough* v. *Canvassers,* 77 Hun, 372; *E. P. Co.* v. *Lacey,* 63 N. Y. 422.)  The legislature having provided a special rule for tax sales for state and county taxes within the county of Rensselaer and for advertising the same, a general statute thereafter enacted, though broad enough in its terms to be applicable to the case, will not from that fact alone alter the special rule, but it will stand unless expressly repealed, or the legislative intent to repeal is clearly manifested.  (*People ex rel. Leet* v. *Keller,* 157 N. Y. 97; *McKenna* v. *Edmundstone,* 91 N. Y. 231; *Vandenburgh* v. *Vil. of Greenbush,* 66 N. Y. 1; *Matter of Evergreens,* 47 N. Y. 216.)

*William J. Roche* for respondent.  The Tax Law governs as to the newspapers in which shall be published notices of sales for unpaid county and state taxes and redemption therefrom, as to all lands situate in the county of Rensselaer, except in the cities of Troy and Rensselaer, and supersedes all the earlier local statutes upon the subject.  (*Matter of Dobson,* 146 N. Y. 357; *Matter of N. Y. Institution,* 121 N. Y. 234; *Johnson* v. *H. R. R. R. Co.,* 49 N. Y. 445; *Barker* v. *Town of Floyd,* 61 App. Div. 92; *People ex rel. Catholic Union* v. *Sayles,* 32 App. Div. 203; *Matter of Huntington,* 168 N. Y. 399; *Pratt Inst.* v. *City of New York,* 183 N. Y.

151 ; *Rose* v. *Northrup*, 41 Misc. Rep. 238.) The Second Class Cities Law is controlling as to the newspapers for the publication of all such notices as to land situate in Troy, and in that particular supersedes all the earlier statutes upon the subject. (*People* v. *Mayor, etc.*, 32 Barb. 102 ; *Matter of Troy Press Co.*, 94 App. Div. 514, 519 ; 179 N. Y. 529 ; *Hickman* v. *Pinkney*, 81 N. Y. 211 ; *People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175 ; *People ex rel. Gress* v. *Hilliard*, 85 App. Div. 507 ; *The Paquete Habana*, 175 U. S. 677 ; *People ex rel. Morrissey* v. *Boland*, 35 Misc. Rep. 117 ; *People ex rel. Gaffigan* v. *Rickerson*, 56 App. Div. 588.)

HAIGHT, J. The right of the relator to the order called for in his petition for a writ of mandamus depends upon the question as to whether chapter 236 of the Laws of 1860 and chapter 461 of the Laws of 1885, as amended by chapter 512 of the Laws of 1892, remain in force or have been repealed by implication by chapter 182 of the Laws of 1898, as amended by chapter 581 of the Laws of 1899, known as the Second Class Cities Law, and by chapter 908 of the Laws of 1896, which is known as the General Tax Law. The county treasurer of Rensselaer county issued his certificate for publication of notices of tax sales of lands and notices of redemptions from sales made pursuant to the provisions of the former statutes, which were special acts applicable to the city of Troy and the county of Rensselaer, and if those statutes remain in force then the relator is not entitled to the relief demanded by him. If, however, the special acts have been superseded or impliedly repealed by the Second Class Cities Law, which is in force in the city of Troy, and the General Tax Law, which is in force in the county of Rensselaer, then the relator is entitled to the order called for.

Under the special acts mentioned the board of supervisors of Rensselaer county is required annually at its fall session to designate as county papers two daily newspapers of opposite politics published in Troy ; also two weekly newspapers having the largest circulation therein, and one weekly newspaper

published in the town of Hoosick, and also one weekly news-
paper printed in the town of Greenbush, in which every
advertisement chargeable to the county shall be advertised,
except the Session Laws.

Under the act for the government of cities of the second
class it is provided by section 29 that at the first meeting of
the common council after the election of its members it shall
by a *viva voce* vote designate two daily newspapers published
in the city to be the official papers of the city; each member
shall be entitled to vote for one of the papers and the two
papers having the highest number of votes shall be the official
papers for two years and until others are designated. By sec-
tion 313, which was inserted by chapter 581 of the Laws of
1899, it is provided that " in all cases where county and state
taxes, which have been levied upon real estate in any city
shall remain unpaid after the time when the same should
have been paid, notice of the sale of lands situate in the city
for such unpaid taxes, shall be published in the official news-
papers of the city, in the same manner that is prescribed in
existing laws with reference to sales of lands for unpaid
city taxes. Where notice of redemption from such sales for
unpaid county and state taxes affecting real estate situated in
any city shall be required by law to be published, the same
shall be published in the official newspapers of the city in the
manner and for the time required by law." It will thus be
observed that under the local acts the papers are to be desig-
nated by the board of supervisors, while under the act for the
government of cities of the second class they are to be desig-
nated by the common council of the city. These provisions
are inconsistent and may result, as they have in this case, in
the selection of different papers. Under the provisions of the
Second Class Cities Law all statutes of the state and ordinances
of cities, so far as inconsistent with the provisions of the act,
are repealed. The Constitution of the state has divided the
cities into three classes, first, second and third. As to the
cities of the second class the legislature has seen fit to enact a
general law for the government of those cities. The city of

Troy is a city of that class, and, therefore, the law applies to it. One of the purposes sought to be accomplished by the dividing of the cities of the state into classes and the adopting of general laws for the government of such cities as are embraced in one of the classes was to obviate special laws and to simplify government and procedure by establishing uniform laws.

Under the General Tax Laws the county treasurer is required to publish the notices for tax sales and redemptions in the newspapers designated for the publication of the Session Laws (§§ 151 and 130). Here, again, we have provisions which are inconsistent with those of the local acts pertaining to the county of Rensselaer which often may result, as they have in this case, in the selection of different papers. We thus have the same question presented with reference to the repeal by implication of the local acts that is presented by the act for the government of the cities of the second class, to which we have already referred. The General Tax Law was prepared by the commissioners of statutory revision, who, in reporting it to the legislature, stated that they had gone over the entire field of statutory law relating to taxation, and without intending to effect radical changes had made various alterations in order to eliminate the inconsistencies and reduce the subject to a harmonious system. The provisions of this act have been under consideration in this court in several cases. It was first up in the case of *People ex rel. Catholic Union* v. *Sayles* (32 App. Div. 203), in which LANDON, J., in delivering the opinion of the court, speaking of this law, said that the intention of the legislature was influenced by the mass of special legislation upon the subject and by the need of a uniform system. This case was affirmed upon the opinion in the Appellate Division (157 N. Y. 679). It was again considered in *Matter of Huntington* (168 N. Y. 399), in which it was stated in substance in the prevailing opinion that we did not think there was any escape from the conclusion that the Tax Law was a revision and substitute for all former statutes, general and special, upon the subject. Again, in *Pratt Insti-*

*tute* v. *City of New York* (183 N. Y. 151), VANN, J., said :
" It is a codifying act designed to reduce all statutes relating
to taxation into a complete and harmonious system. A codify-
ing act is presumed to exhaust the subject to which it relates,
unless a different intention appears on the face of the statute
or is an irresistible inference from special circumstances. The
new enactment is substituted in place of all statutes previously
existing, and becomes the sole rule of action." (See Suther-
land on Statutory Construction [Lewis ed.], §§ 269, 270 ;
*King* v. *Cornell*, 106 U. S. 395 ; *Tracy* v. *Tuffly*, 134 U. S.
206, 223 ; *State* v. *Wilson*, 43 N. H. 415, 419 ; *Bartlet* v.
*King*, 12 Mass. 537, 545.) It is true that in these cases to
which we have referred in this court we had under considera-
tion other provisions of the Tax Law, but what was therein
stated with reference to the purposes of the act is equally
applicable to the provisions which we now have under consid-
eration, and we think they are controlling upon the question
now presented. The provisions of the Cities Law only
embraced sales and redemptions of lands located within the
city. The provisions of the General Tax Law pertain to the
sale and redemption of lands in the county outside of the city.
Together they provide for a complete and harmonious system
of taxation and procedure. They exhaust the subject to
which they relate, and irresistibly lead to the inference that
the legislature intended that they should become a substitute
in place of the local previously existing statutes. We, there-
fore, conclude that the case was properly disposed of in the
Appellate Division.

The order should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WERNER,
WILLARD BARTLETT and HISCOCK, JJ., concur.

Order affirmed.